**+-UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Lorenzen*, 25-cv-1933<br>*McCracken*, 25-cv-1805<br>*Dahl*, 25-cv-1902 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants 3M Company and Arizant Healthcare Inc. (collectively, "3M") move for judgment on the pleadings in three cases for failure to state claim upon which relief can be granted. The claims brought in these cases are time-barred under the applicable South Dakota statutes of limitations. The Court should enter judgment on the pleadings in favor of 3M and dismiss Plaintiffs' cases with prejudice.

3M seeks dismissal of these claims now, for two reasons. First, the Bair Hugger MDL has been ongoing for nearly a decade and is comprised of thousands of constituent cases, many of which are demonstrably untimely as a matter of law. At each "wave" of bellwether proceedings, Plaintiffs have voluntarily dismissed scores of cases (many based on statute of limitations

grounds), with others dismissed by court order, resulting in a significant waste of resources by both the Parties and the Court. The time has come, with a third wave of bellwether proceedings in full swing, to take steps to cull the MDL of meritless cases by identifying and dismissing claims that are time-barred on their face.

Second, Plaintiffs' claims are time-barred by the applicable South Dakota statutes of limitation. Under South Dakota law, product liability actions accrue when the alleged injury "became known or should have become known to the injured party." S.D. Codified Laws ("SDCL") § 15-2-12.2; *Cashman v. CHS, Inc.*, No. CIV 13-3002-RAL, 2013 WL 2458621, at *3 (D.S.D. June 6, 2013) ("What triggers the running of SDCL 15–2–12.2 is that the injured party knows or should know that the damage has occurred, not full knowledge of exactly how and why an event occurred."). Applying similar "discovery rules," this Court recently granted summary judgment in cases time-barred under Iowa and Louisiana law, finding that a plaintiff is on inquiry notice of potential claims against 3M upon diagnosis of an infection. *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025) (Iowa); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (Louisiana); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025) (Louisiana). Here, as demonstrated below, applying this finding allows the Parties and the Court to easily identify and take appropriate action on these South Dakota-

based cases that are untimely on their face, given the time that has elapsed since the Plaintiffs' diagnoses. Taking these steps now, on a sampling of South Dakota cases, would be an important first step in culling the inflated inventory of existing cases, and it would enable the Parties and Court to focus on cases that are potentially triable and more worthy of case-specific attention.

Other MDL courts, faced with similar inventory inflation problems, have utilized statute-of-limitations motion practice to exercise control over unwieldy dockets. *See, e.g.*, *In re Cook Medical, Inc., IVC Filters Mktg., Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, Dkt. 14601 (S.D. Ind. Oct. 26, 2020) (Case Management Order No. 28, ordering plaintiffs to screen for time-barred cases based upon statute of limitations and statute of repose decisions in exemplar cases) (Ex. A). In fact, Judge Schultz previously established a framework in this MDL by which facially time-barred cases could be identified and dismissed for this very purpose. (*See* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922.) Respectfully, the time has come for the Court and the Parties to resume these efforts. The Court should grant 3M's Motion for Judgment on the Pleadings.[1]

---

[1] To the extent Plaintiffs contend that 3M's Motion is untimely under Pretrial Order No. 22's ("PTO 22") deadline for dispositive motions on "general causation and issues not specific to bellwether cases," any such argument is misguided. The intent of the PTO22 deadline, as the Parties understood it at the time and today, was to set one deadline for general causation summary judgment motions, and another deadline for bellwether case-specific summary

## BACKGROUND

On or about July 16, 2018, Plaintiff Marlin Lorenzen ("Lorenzen") underwent a surgery in South Dakota. During the surgery, a Bair Hugger patient warming system ("Bair Hugger system") was used. (Ex. B, Lorenzen Compl. ¶¶ 2, 7.) Lorenzen subsequently developed a periprosthetic joint infection ("PJI"), which he attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, Lorenzen alleges that he underwent multiple additional procedures between September 14, 2018, and January 8, 2019. (*Id.* ¶ 9.) On April 30, 2025, approximately six and a half years after first being treated for an infection, Lorenzen commenced this action against 3M by direct filing his Complaint in this MDL. (*See generally*, Ex. B, Lorenzen Compl.) In the Complaint, Lorenzen designated the District of South Dakota as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

On or about July 5, 2018, Plaintiff William McCracken ("McCracken") underwent a surgery in South Dakota. During the surgery, a Bair Hugger system was used. (Ex. C, McCracken Compl. ¶¶ 2, 7.) McCracken subsequently

---

judgment motions. This Motion does not fall into either category. Furthermore, this is not the first time that the Court and Parties have addressed the statute of limitations for facially time-barred non-bellwethers (*see* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922), and no Plaintiff has previously argued that such motion practice would be barred by PTO 22's motion deadline.

developed a PJI, which he attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, McCracken alleges that he underwent a revision procedure on or about July 19, 2018. (*Id.* ¶ 9.) On April 29, 2025, almost seven years after first being treated for an infection, McCracken commenced this action against 3M by direct filing his Complaint in this MDL. (*See generally*, Ex. C, McCracken Compl.) In the Complaint, McCracken designated the District of South Dakota as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

On or about May 13, 2019, Plaintiff David Dahl ("Dahl") underwent a surgery in South Dakota. During the surgery, a Bair Hugger system was used. (Ex. D, Dahl Compl. ¶¶ 2, 7.) Dahl subsequently developed a PJI, which he attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, Dahl alleges that he underwent "numerous procedures" between May 25, 2019, and August 8, 2019. (*Id.* ¶ 9.) On April 30, 2025, nearly six years after first being treated for an infection, Dahl commenced this action against 3M by direct filing his Complaint in this MDL. (*See generally*, Ex. D, Dahl Compl.) In the Complaint, Dahl designated the District of South Dakota as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

**Chart Summarizing the Relevant Details of Plaintiffs' Cases**

| **Plaintiff** | **Lorenzen** | **McCracken** | **Dahl** |
|---|---|---|---|
| **Case Number** | 18-cv-1218 | 24-cv-3664 | 25-cv-1869 |
| **Plaintiff's Home State** | South Dakota | South Dakota | South Dakota |
| **Designated Jurisdiction** | D. S.D. | D. S.D. | D. S.D. |
| **Location of Index Surgery** | Brookings Health System, Brookings, SD | Black Hills Surgical Hospital, Rapid City, SD | Orthopedic Institute, Sioux Falls, SD |
| **Date of Index Surgery** | July 16, 2018 | July 5, 2018 | May 13, 2019 |
| **Date of Injury** | September 14, 2018 | July 19, 2018 | May 25, 2019 |
| **Filing Date** | April 30, 2025 | April 29, 2025 | April 30, 2025 |
| **Time Between Surgery and Filing Date** | 6 years, 9 months, 14 days | 6 years, 9 months, 24 days | 5 years, 11 months, 17 days |
| **Time Between Injury and Filing Date** | *6 years, 7months, 16 days* | *6 years, 9 months, 10 days* | *5 years, 11 months, 5 days* |

**LEGAL STANDARD**

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standard used for a motion to dismiss under to Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Under this standard, the Court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). To survive a Rule

12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). An argument that claims are time-barred is properly raised in a motion under Rule 12(c). *See Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 594 (8th Cir. 2016) (affirming District of Minnesota's dismissal of claims as time-barred under Alabama law); *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019).

## ARGUMENT

### I. South Dakota Law Applies.

Pursuant to Pretrial Order No. 5: Direct Filing, where a plaintiff directly files his or her complaint in the MDL and designates an alternative jurisdiction as the "appropriate venue" for trial, "the choice-of-law rules from the appropriate venue shall apply." (Pretrial Order No. 5: Direct Filing, Dkt. 37.) Here, the cases captioned above were direct-filed in the MDL, and have identified the District of South Dakota as their appropriate venues. (*See* Ex. B, Lorenzen Compl. ¶ 5; Ex. C, McCracken Compl. ¶ 5; Ex. D, Dahl Compl. ¶ 5.)

As a federal district court sitting in diversity, the District of South Dakota would apply South Dakota choice-of-law rules with respect to issues of state law. *See, e.g.*, *Pinnacle Pizza Co., Inc. v. Little Caesar Enterprises, Inc.*, 560 F. Supp. 2d 786, 792 ("In diversity cases, federal courts must apply the choice of law rules of the forum state to determine which state's substantive law applies.") (citing *Retail Associates, Inc. v. Macy's East, Inc.*, 245 F.3d 694, 697 (8th Cir. 2001)). Therefore, South Dakota's choice-of-law rules dictate this Court's analysis.[2]

In tort cases, South Dakota courts apply the "most significant relationship" test from the Restatement (Second) of Conflict of Laws to resolve choice-of-law questions. *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63, 68 (S.D. 1992); *see also S. Dakota Wheat Growers Ass'n v. Chief Indus., Inc.*, 337 F. Supp. 3d 891, 902 (D.S.D. 2018) ("South Dakota has also adopted the most significant relationship approach for torts."); *DeLonga v. Diocese of Sioux Falls*, 329 F. Supp. 2d 1092, 1099-1100 (D.S.D. 2004) (noting that South Dakota

---

[2] To the extent Plaintiffs contend that Minnesota procedural law should govern the applicable statute of limitations, under Minnesota's borrowing statute, the South Dakota statute of limitations would still apply because South Dakota substantive law applies. *See* Minn. Stat. § 541.31, subd. 1(a) ("[I]f a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies"). Similarly, to the extent Plaintiffs argue that statutes of limitations are procedural under South Dakota law, South Dakota statues of limitations would still apply because Plaintiffs have identified the District of South Dakota as the appropriate venue. (*See* Ex. B, Lorenzen Compl. ¶ 5; Ex. C, McCracken Compl. ¶ 5; Ex. D, Dahl Compl. ¶ 5.)

applies "the most significant relationship approach for deciding choice of law in multistate tort conflicts," and concluding "the South Dakota statute of limitations" would apply). That test requires a court to consider which state "has the most significant relationship to the occurrence and the parties" by weighing the following factors: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." *Chambers*, 488 N.W.2d at 67-68 (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

Here, these factors favor applying South Dakota law. Plaintiffs are residents and citizens of South Dakota. (Ex. B, Lorenzen Compl. ¶ 2; Ex. C, McCracken Compl. ¶ 2; Ex. D, Dahl Compl. ¶ 2.) Their alleged injuries occurred in South Dakota, where a Bair Hugger was used during their surgeries and where they resided when they developed infections. (Ex. B, Lorenzen Compl. ¶¶ 7-9; Ex. C, McCracken Compl. ¶¶ 7-9; Ex. D, Dahl Compl. ¶¶ 7-9.) And the relationship between the parties—to the extent there is one—is centered in South Dakota because that is where Plaintiffs used the Bair Hugger system. Further, given that Plaintiffs have designated federal courts in South Dakota as the appropriate venue for their cases, applying South Dakota law will serve the interests of protecting justified expectations and providing certainty,

predictability, and uniformity of result. These factors, then, all weigh in favor of applying South Dakota law. *See, e.g.*, *SMA, LLC v. Chief Industries, Inc.*, 450 F. Supp. 3d 1005, 1015-1016 (D.S.D. 2020) (finding South Dakota law should apply where the injury occurred in South Dakota and the parties' relationship was centered in South Dakota).

Although some of the alleged conduct that caused the alleged injury could arguably have occurred in Minnesota, where Defendants are headquartered, this does not change the analysis. *See id.* (concluding that South Dakota law should apply because that is where the injury occurred and where the parties' relationship was centered, despite acknowledging that some of the alleged negligent conduct may have occurred in a different state). Other courts, including this Court, that have applied the most significant relationship test in medical-product-liability cases have reached the same conclusion. *See, e.g.*, *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 at 7 (D. Minn. Jan. 7, 2019) (where Alabama plaintiff was allegedly injured in Alabama during surgery with a Bair Hugger system, "Plaintiff could have expected claims arising from her surgery in Alabama to be governed by its law"); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) (Minnesota choice-of-law factors favor applying law of state where plaintiff lives and was injured).

## II. Plaintiffs' Claims All Sound in Product Liability and Are Barred by the Applicable Three-Year Statute of Limitations.

Courts determine "the appropriate limitations period by focusing on the nature of the cause of action or the right sued upon (and not the form of the action)." *Harms v. Cigna Ins. Companies*, 421 F. Supp. 2d 1225, 1230 (D.S.D. 2006) (internal quotations omitted). Here, because each Plaintiff seeks damages for personal injuries stemming from an allegedly defective product, (*see* Ex. B, Lorenzen Compl.; Ex. C, McCracken Compl.; Ex. D, Dahl Compl.), Plaintiffs' claims against 3M all sound in product liability. *Cf. Follette v. Wal-Mart Stores, Inc.*, 41 F.3d 1234, 1236 (8th Cir. 1994) (holding plaintiff's warranty claims were really product liability claims and therefore subject to the three-year statute of limitations period for product liability actions as opposed to the four-year limitations period found in the UCC); *Bruske v. Hille*, 1997 S.D. 108, ¶ 13, 567 N.W.2d 872, 876 (prohibiting plaintiff from characterizing a medical malpractice claim as a fraud claim in order to "shift to a more beneficial statute of limitations"). As a result, South Dakota's three-year statute of limitations for product liability actions applies to all of Plaintiffs' claims, "regardless of the substantive legal theory upon which the action is brought." *See* SDCL § 15-2-12.2.

Product liability actions under South Dakota law "may be commenced only within three years of the date when the personal injury, death, or property

damage occurred, became known or should have become known to the injured party." SDCL § 15-2-12.2. "What triggers the running of SDCL 15–2–12.2 is that the injured party knows or should know that the damage has occurred, not full knowledge of exactly how and why an event occurred." *Cashman v. CHS, Inc.*, No. CIV 13-3002-RAL, 2013 WL 2458621, at *3 (D.S.D. June 6, 2013); *Moore v. Michelin Tire Co., Inc.*, 603 N.W.2d 513, 519 (S.D. 1999) ("A cause of action against a manufacturer accrues when the personal injury becomes known or should become known to the injured party."). Beyond knowledge of an injury, there is nothing more that is needed to trigger the running of the limitations period. Indeed, "absent fraudulent concealment or specific statutory language," "[t]he South Dakota Supreme Court" has rejected requests to impose common law discovery rules. *See Baye v. Diocese of Rapid City*, Civ. No. 07-5056-KES, 2010 WL 758877, at *2 (D.S.D. Feb. 26, 2010).

Here, Plaintiffs claims are all time-barred by the three-year statute of limitations for product liability actions. Plaintiffs' respective causes of action all began to run, at the latest, on the dates when Plaintiffs were first treated for their PJIs, for at that time they knew they were injured. *Cashman*, 2013 WL 2458621, at *3; *Moore*, 63 N.W.2d at 519. Lorenzen underwent his index surgery on July 16, 2018, and underwent his first revision procedure on September 14, 2018. (Ex. B, Lorenzen Compl. ¶¶ 7-9.) He did not, however, file his lawsuit until April 30, 2025, long after the three-year limitations period

had expired. Similarly, McCracken underwent his index surgery on July 5, 2018, underwent a revision procedure on July 19, 2018, but did not file his lawsuit until April 29, 2025. (Ex. C, McCracken Compl. ¶¶ 7-9.) And the same is true for Dahl. Dahl underwent his index surgery on May 13, 2019, underwent his first revision procedure on May 25, 2019, but did not file his lawsuit until April 30, 2025. (Ex. D, Dahl Compl. ¶¶ 7-9.) Because more than three years passed between the first dates on which Plaintiffs were treated for their PJIs and the dates on which they filed their lawsuits, their claims are all untimely. *See* SDCL § 15-2-12.2.[3]

## III. Even if Other Statutes of Limitations Applied to Plaintiffs' Warranty, Unjust Enrichment, and Fraud-Based Claims, those Claims Would Still Be Barred as a Matter of Law.

The only factual allegations of harm pleaded by Plaintiffs relate to personal injuries stemming from the use of an allegedly defective product. (*See* Ex. B, Lorenzen Compl.; Ex. C, McCracken Compl.; Ex. D, Dahl Compl.) As a result, the statute of limitations for product liability actions should apply to bar all of Plaintiffs' claims. But even if Plaintiffs argue that certain causes of action should not be classified as product liability actions (e.g., their warranty,

[3] To the extent Plaintiffs attempt to argue that any of their personal injury claims are grounded in general negligence principles (rather than in product liability law), the statute of limitations applicable to such personal injury claims is also three years, and so the result will be the same. *See* SDCL § 15-2-14(3).

unjust enrichment, or fraud-based claims), those claims would still be barred as a matter of law.

### A. Plaintiffs' Warranty-Based Claims Are Time-Barred Even if the Court Applies the Statute of Limitations for Claims Brought Pursuant to the Uniform Commercial Code (UCC)

Plaintiffs' warranty-based claims fail even if the Court applies the more generous four-year statute of limitations for claims brought under the UCC. Breach of warranty claims under the UCC "must be commenced within four years after the cause of action has accrued." SDCL § 57A-2-725(1). "Under § 2-725(2) of the [UCC], '[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.'" *Nw. Pub. Serv., a Div. of Nw. Corp. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 974 (D.S.D. 2002) (quoting SDCL § 57A-2-725(2)). "A breach," moreover, "occurs when tender of delivery is made." *See* SDCL § 57A-2-725(2).

Here, this means that Plaintiffs' breach of warranty claims accrued no later than on the date of their index surgeries, which is the latest possible date of delivery of the allegedly defective Bair Hugger systems used during their index surgeries. Because Plaintiffs did not file their lawsuits within four years of their index surgeries, Plaintiffs' breach of warranty claims are untimely even if the Court applies the UCC statute of limitations.

### B. Plaintiffs Unjust Enrichment Claims Fail as a Matter of Law

Even if Plaintiffs' unjust enrichment claims are not time-barred (they are), Plaintiffs' unjust enrichment claims would still fail as a matter of law because a "court must dismiss [an] unjust enrichment claim[]" whenever "there is an adequate remedy of law available." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 655 F. Supp. 3d 825, 867 (D.S.D. 2023).

Here, Plaintiffs' "[product liability] claims provide an adequate remedy at law." *Id.* (citing *Paweltzki v Paweltzki,* 964 N.W.2d 756, 769 (S.D. 2021)). Consequently, regardless of whether Plaintiffs ultimately succeed on their product liability claims, because they have "an adequate remedy at law," the Court "must dismiss the unjust enrichment claims." *Jim Hawk Truck-Trailers of Sioux Falls, Inc.*, 655 F. Supp. 3d at 867-8 (dismissing unjust enrichment claims where plaintiff had an adequate remedy at law *even if* plaintiff may not ultimately succeed on those legal theories).

### C. Plaintiffs' Consumer Fraud and/or Unfair and Deceptive Trade Practices Claims Fail Even if the Court Applies the Four-Year Limitations Period Set Forth in SDCL § 37-24-33

Actions brought under South Dakota's deceptive trade practices and consumer protection statutes may ***not*** "be brought more than four years after the occurrence or discovery of the conduct which is the subject of the action."

SDCL § 37-24-33. This Court has already determined that a reasonably diligent Bair Hugger Plaintiff could investigate and discover their claims at the time they are diagnosed with a PJI. *See Skinner*, No. 17-2149, ECF 98 at 6-7; *Jones*, No. 23-1425, ECF 103 at 8; *Pelican*, No. 23-1818, ECF 136 at 7-8. At that time, Plaintiffs are deemed to have constructive notice of a claim. Under south Dakota law, constructive notice is deemed to exist for "[e]very person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence." SDCL § 17-1-4; *Inst. of Range & the Am. Mustang v. Nature Conservancy*, 922 N.W.2d 1, 6 (S.D. 2018).

Here, because the Plaintiffs were all diagnosed with PJIs more than four years before filing their lawsuits, their South Dakota consumer fraud and/or unfair and deceptive trade practices claims Plaintiffs are all time-barred.

### D. Minnesota Statutory Consumer Protection Claims Fail Because Plaintiffs Were Not Injured in Minnesota

Plaintiffs also assert claims under the Minnesota Prevention of Consumer Fraud Act, Minnesota Deceptive Trade Practices Act, Minnesota Unlawful Trade Practices Act, and Minnesota False Advertising Act (collectively, "Minnesota Consumer Protection Statutes"). These Minnesota-based claims fail as a matter of law because Plaintiffs were not injured in Minnesota.

There is a "general presumption" under Minnesota law that "Minnesota statutes do not apply extraterritorially," and that presumption cannot be overcome unless the Minnesota Legislature "explicitly state[s] that it intends for a law to have extraterritorial effect." *Hull v. ConvergeOne, Inc.*, 570 F. Supp. 3d 681, 691 (D. Minn. 2021). There is no such explicit statement in the Minnesota Consumer Protection Statutes. Accordingly, courts have not applied these statutes extraterritorially to plaintiffs who reside and were injured outside of Minnesota. *See, e.g.*, *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156-57 (D. Minn. 2023) (determining there is no legal support for applying Minnesota consumer protections statutes extraterritorially); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 962-63 (D. Minn. 2020) (Minnesota consumer protection statutes do not apply to nonresidents alleging out-of-state injuries "[g]iven the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such an application"), *aff'd*, 9 F.4th 981 (8th Cir. 2021).

Because Plaintiffs allege they were injured in South Dakota and not Minnesota, Plaintiffs cannot bring claims under the Minnesota Consumer Protection Statutes. These claims fail as a matter of law. *See Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29, at *11-13 (D. Minn. Jan. 7, 2019) (agreeing with 3M and dismissing the Minnesota consumer protection claims where plaintiff's injury occurred outside of Minnesota).

### E. Plaintiffs' "Fraud-Based" Claims Fail Because Plaintiffs Failed to Plead them with Particularity

In addition to being time-barred by the three-year statute of limitations for product liability actions, Plaintiffs' "fraud-based" claims also all fail because Plaintiffs failed to plead them with particularity as required by Fed. R. Civ. P. 9(b). *See First Dakota National Bank v. Ruba*, 412 F. Supp. 3d 1153, 1159 (D.S.D. 2019) ("Federal procedural law requires allegations of fraud to be pleaded with particularity."). To satisfy Rule 9(b), "the party alleging fraud 'must typically identify the who, what, where, when and how' of the alleged fraud.'" *Id.* (quoting *BJC Health Sys v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). In other words, the party alleging fraud must allege "'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)).

Here, although Plaintiffs each allege various fraud-based claims in their Short Form Complaints, (*see* Ex. B, Lorenzen Compl. ¶ 12; Ex. C, McCracken Compl. ¶ 12; Ex. D, Dahl Compl. ¶ 12), neither their Short Form Complaints nor the Master Long Form Complaint pleads the claims with the requisite particularity. *(See generally* Master Long Form Complaint, MDL ECF 97; *see*

*also* Ex. B, Lorenzen Compl. ¶ 12; Ex. C, McCracken Compl. ¶ 12; Ex. D, Dahl Compl. ¶ 12.) Across the board, the complaints consistently fail to identify the who, what, where, when and how of the alleged fraud with any particularity, and instead rely solely on conclusory allegations. (*See* Ex. B, Lorenzen Compl. ¶ 12; Ex. C, McCracken Compl. ¶ 12; Ex. D, Dahl Compl. ¶ 12; Master Long Form Complaint, MDL ECF 97, at §§ 176-184.) The Court should therefore dismiss Plaintiffs' "fraud-based" claim for this reason as well.

### F. The "Fraud-Based" Claims of Lorenzen and McCracken Are Time-Barred Even if the Court Applies the Six-Year Limitations Period Set Forth in SDCL § 15-2-13(6)

Finally, the "fraud-based" claims of Lorenzen and McCracken are time-barred even if the Court applies the six-year statute of limitations set forth in SDCL § 15-2-13(6). Although South Dakota recognizes a discovery rule for fraud-based claims, it only tolls the limitations period until a plaintiff "discovers the claim or should have discovered the claim with reasonable diligence." *S. Dakota Wheat Growers Ass'n v. Chief Indus., Inc.*, 337 F. Supp. 3d 891, 908 (D.S.D. 2018); *Inst. of Range & the Am. Mustang*, 922 N.W.2d 1 at 6 ("The statute of limitations on a claim of fraud begins to run when a party 'first become[s] aware of facts prompting a reasonably prudent person to seek information about the problem and its cause.'" (quoting *Strassburg v. Citizens State Bank*, 581 N.W.2d 510, 515 (S.D. 1998)).

Here, because this Court has already determined that a reasonably diligent Bair Hugger Plaintiff could investigate and discover their claims at the time they are diagnosed with a PJI, the "fraud-based" claims for Lorenzen and McCracken would be time-barred even under a six-year statute. *See Skinner*, No. 17-2149, ECF 98 at 6-7; *Jones*, No. 23-1425, ECF 103 at 8; *Pelican*, No. 23-1818, ECF 136 at 7-8. Lorenzen and McCracken were both diagnosed with a PJI more than six years before they filed their complaints. (Ex. B, Lorenzen Compl. ¶ 9; Ex. C, McCracken Compl. ¶ 9.) As a result, their "fraud-based" claims are time-bared even if the Court applies a six-year limitations period.

## IV. Fraudulent Concealment Does Not Save Plaintiffs' Untimely Claims.

To properly plead tolling based on fraudulent concealment in federal court, a plaintiff must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880; *see also id.* at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed

to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.”).

Substantively, to successfully invoke the doctrine of fraudulent concealment and estop the defendant from asserting a statute of limitations defense, plaintiffs must show “(1) the [defendants] knowingly concealed material facts that constitute plaintiffs’ causes of action or, being fiduciaries, knowingly remained silent and failed to disclose those facts despite a duty to do so; (2) plaintiffs exercised due diligence in attempting to discover their causes of action; and (3) despite plaintiffs’ due diligence, the [defendants’] concealment prevented plaintiffs from discovering their causes of action.” *Eagleman v. Diocese of Rapid City*, 862 N.W.2d 839, 850 (S.D. 2015).

Here, Plaintiffs do not even attempt to plead the elements of fraudulent concealment, let alone do so with the requisite particularity. Although they each checked “fraudulent concealment” as a theory of liability in their respective Complaints, (Ex. B, Lorenzen Compl. ¶ 12; Ex. C, McCracken Compl. ¶ 12; Ex. D, Dahl Compl. ¶ 12), they do not allege any facts demonstrating that 3M made any active or affirmative efforts to conceal any material facts from Plaintiffs specifically, or explain how or why Plaintiffs were prevented from discovering 3M’s alleged misconduct or their causes of action. *See Eagleman*, 862 N.W.2d at 850. They also do not allege when or how they discovered 3M’s alleged fraud, or that 3M was a fiduciary to Plaintiffs. *See id.*;

*Summerhill*, 637 F.3d at 880. These allegations are also not contained in the Master Long Form Complaint, which contains general allegations but none that are specific to Plaintiffs or their particular circumstances. (*See generally* Master Long Form Complaint, MDL ECF 97.)

In addition, Plaintiffs have not pled and cannot demonstrate that they exercised due diligence to discover their causes of action before the limitations period expired. *See Eagleman*, 862 N.W.2d at 850; *Gades v. Meyer Modernizing Co., Inc.*, 865 N.W.2d 155, 160 (S.D.2015) (explaining that "establishing fraudulent concealment will not toll the period of limitation beyond the moment 'the claim is discovered or might have been discovered with reasonable diligence'" (quoting *Strassburg*, 581 N.W.2d at 515)). As noted repeatedly above, this Court has already determined that a reasonably diligent Bair Hugger Plaintiff could investigate and discover their claims at the time they are diagnosed with a PJI. *See Skinner*, No. 17-2149, ECF 98 at 6-7; *Jones*, No. 23-1425, ECF 103 at 8; *Pelican*, No. 23-1818, ECF 136 at 7-8; *see also Healy v. Osborne*, 934 N.W.2d 557, 566 (S.D. 2019) (explaining that "actual or constructive notice precludes [plaintiff] from using fraudulent concealment to extend the statutory period"). Plaintiffs do not allege that they did so, nor do they explain why they did not.

Third, even if (for the sake of argument) the statute of limitations could have been tolled for certain Bair Hugger Plaintiffs, any tolling based on

fraudulent concealment would end when the Bair Hugger MDL was formed on December 11, 2015. Since that time, legal advertisements and information about potential claims against the Bair Hugger system have been readily available in the public domain, (*see generally*, Transfer Order, MDL ECF 1), ending any possible ability of defendants to fraudulently conceal the basis for a lawsuit. *See City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL"), *appeal filed*, No. 25-1258 (1st. Cir. Mar. 26, 2025); *see also Zephier v. Cath. Diocese of Sioux Falls*, 752 N.W.2d 658, 666 (S.D. 2008) ("Fraudulent concealment does not, however, toll the statute of limitations, no matter the nature of the concealment if a plaintiff is already on notice of facts sufficient to give rise to a claim."); *Healy*, 934 N.W.2d at 566 (same).

Here, Lorenzen underwent his index surgery on July 16, 2018—after the MDL was already in full swing—and was first treated for an infection on September 14, 2018. (Ex. B, Lorenzen Compl. ¶¶ 7-9.) The same is true for McCracken and Dahl. McCracken underwent his index surgery on July 5, 2018, and was first treated for an infection on July 19, 2018. (Ex. C, McCracken Compl. ¶¶ 7-9.) And Dahl underwent his index surgery on May 13, 2019, and was first treated for an infection on May 25, 2019. (Ex. D, Dahl Compl. ¶¶ 7-

9.) In each case, Plaintiffs had their index surgeries and were treated for infections more than two years after the MDL had been formed. Any reasonably diligent efforts to investigate a potential claim would therefore have led Plaintiffs to discover the Bair Hugger litigation. As a result, fraudulent concealment does not—and cannot—operate to toll Plaintiffs claims. Their lawsuits, therefore, are untimely.

## V. Plaintiffs' "Cause of Action" for Punitive Damages Fails Because their Underlying Claims Fail

Finally, Plaintiffs each list punitive damages as an additional "cause of action." (See Ex. B, Lorenzen Compl. ¶ 12; Ex. C, McCracken Compl. ¶ 12; Ex. D, Dahl Compl. ¶ 12). But there is no independent cause of action for punitive damages, and because Plaintiffs' other claims must be dismissed, their requests for punitive damages also fail. *See, e.g., Olson-Roti v. Kilcoin*, 2002 S.D. 131, ¶ 27, 653 N.W.2d 254, 259–60 ("This Court has stated that punitive damages are allowable only when supported by a cause of action." (citing *Henry v. Henry*, 2000 SD 4, ¶ 5, 604 N.W.2d 285, 288)); *see also Schaffer v. Edward D. Jones & Co.*, 521 N.W.2d 921, 928 (S.D. 1994) (holding that "punitive damages are not allowed absent an award for compensatory damages").

## CONCLUSION

Based on the Plaintiffs' own allegations, their claims are all untimely as a matter of law and should be dismissed with prejudice.

Respectfully submitted,

Date: December 15, 2025

*s/John P. Mandler*

John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***